SCIRICA, Circuit Judge,
concurring.
I agree with the Court’s disposition of this case.
This case presents an unfortunate situation. D.F. had significant special educational needs requiring accommodation and presenting a significant challenge to his inclusion in a general education classroom. Apparently, a contentious relationship developed between A.C. — D.F.’s mother — and school officials, impeding cooperation and turning the question of the proper education for D.F. into a prolonged litigious struggle involving dueling experts. These circumstances put D.F.’s teachers into a difficult position, caught between their legal duties and responsibilities to D.F., their responsibility to safeguard other students,[1] and the legal obligations imposed in the course of the due process proceedings, particularly the stay-put requirement triggered under 20 U.S.C. § 1415(3).
I read the relevant course of events as follows. At D.F.’s initial IEP meeting in fall 2008 when D.F. transferred into Collingswood from Camden, A.C. requested that D.F. not be placed in the small-class special education kindergarten classroom, as recommended by his Camden IEP, because his brother was in that class; the school accordingly placed D.F. into a regular education classroom. When it became apparent that the placement was inadequate, Collingswood agreed to A.C.’s request that a functional behavior assessment be performed and began to provide a one-to-one classroom aide prior to A.C.’s filing a due process petition on January 21, 2009. The petition triggered the stay-put requirement. The school developed an additional IEP to accommodate D.F., but A.C. declined to participate.[2] Meanwhile, *503 D.F.’s behavior continued to disrupt classes significantly throughout spring 2009. At the end of the school year, the school district proposed an out-of-district placement for D.F., but A.C. insisted on her son’s stay-put rights. In August, the school district filed a motion for emergent relief to modify the stay-put order so that it could implement the February 2009 IEP or seek an alternative placement for D.F. A.C. opposed this motion, and the ALJ denied the district’s request without prejudice. After the events in fall 2009, Collingswood again filed for emergent relief, seeking only placement outside the district. The ALJ granted the motion, placing D.F. on home instruction, and ordered that A.C. cooperate with finding a placement. D.F. was accepted to the Archway School, but A.C. declined to allow his transfer there. The ALJ subsequently found Archway to be the appropriate placement. A.C. appealed and did not send D.F. to Archway; she then moved to Georgia, mooting all relief except, as we now hold, the compensatory education claim.
I agree with the Court that resolution of whether D.F. received FAPE during the relevant time period is a question for the District Court in the first instance. I also agree that more fact-finding may be warranted.

. As the Court notes, by fall 2009 D.F.’s actions, including repeated physical attacks on students and teachers, posed a serious risk of harm to himself and others.

. As the Court states, this IEP “specifically approved the use of physical restraints on D.F.” The February 26, 2009 IEP called for the use of "district-approved Crisis Prevention/Intervention (CP/I) techniques” in the event that D.F. "is presenting a significant *503 and immediate risk of injury to self or others.” (Appellant’s App. 62-63). Among the possible interventions were various "Personal Emergency Interventions” that evidently involved school personnel holding D.F. until he displayed safe behavior. The record provides only two pages of what was apparently a twelve-page IEP.